## 19214

Kate ANDERS, Respondent, v. Agnes NASH and Norwood Nash, a Minor Over Fourteen (14) Years of Age, Appellants. Joe ANDERS, Respondent, v. Agnes NASH and Norwood Nash, a Minor Over Fourteen (14) Years of Age, Appellants.

(180 S. E. (2d) 878)

*Ralph Hoffman, Esq., Suggs & McCutcheon,* of Conway, *for Defendants-Appellants,*

*Messrs. J. D. Todd, Jr., O. Doyle Martin,* of Greenville, and *James P. Stevens,* of Loris, *for Plaintiffs-Respondents,*

April 29, 1971.

LEWIS, Justice:

This appeal involves two actions, both arising out of an automobile-pedestrian accident which occurred on July 3, 1967, when a vehicle owned by the defendant Agnes Nash, and driven by her son, the defendant Norwood Nash, collided with the plaintiff, Kate Anders, as she was attempting to walk across Ocean Boulevard, in the City of Myrtle Beach, South Carolina. Actions were brought by Mrs. Anders and her husband, Joe Anders, against the above defendants to recover the damages sustained from the accident. The action of Mrs. Anders sought recovery for her personal injuries; and that of her husband for medical expenses of the wife, and loss of her services and consortium. Both actions charged negligence and recklessness on the part of defendant Norwood Nash in the operation of his mother's automobile.

The answers of the defendants in both cases contained general denials and interposed the further defenses of sole negligence and recklessness, contributory negligence and recklessness, sudden emergency, and unavoidable accident.

By agreement the cases were tried together at the November 1969 Term of the Court of Common Pleas for Horry

County resulting in a verdict for the plaintiffs for actual damages—in the case of the wife for $25,000.00 and in that of the husband for $18,000.00. Defendants have appealed from the refusal by the lower court of their timely motions for a directed verdict, judgment notwithstanding the verdicts, and for a new trial, both appeals presenting identical issues.

The exceptions charge that the lower court erred in (1) permitting an amendment to the complaint of Mrs. Anders, after the jury was sworn, so as to allege disfigurement as an element of damage; (2) refusing to strike testimony of Mrs. Anders to the effect that she "was cautious" as she walked across the street; (3) excluding testimony concerning the statement, allegedly made by plaintiffs' son after the accident: "Mama, I told you not to cross;" and (4) refusing to grant defendants' motion for a directed verdict upon the ground that plaintiffs' injuries and damages resulted from the sole negligence or contributory negligence of Mrs. Anders.

The complaint of Mrs. Anders alleged that she had sustained permanent disability and that, "among others, her injuries consisted of a fracture of the pelvis, fracture and dislocation of the right shoulder, cerebral concussion and multiple bruises and abrasions", causing her to "suffer greatly" and rendering her "permanently partially disabled in the use of her right arm and have affected her normal and customary ability to walk and maneuver."

After the jury was drawn, motion was made to amend the complaint of Mrs. Anders so as to specifically include mental anguish, embarrassment, humiliation, and disfigurement as elements of damage. The trial judge allowed the complaint to be amended to include mental anguish and disfigurement, but refused it in the other particulars.

Defendants apparently concede the propriety of the amendment to include mental anguish as an element of damage, but contend that error was committed in permitting the complaint to be amended to include disfigurement. They take

the position that the amendment caught them by surprise and deprived them of the opportunity to meet the issue.

The court has very broad discretion, under Section 10-692 of the 1962 Code of Laws, to grant amendments to pleadings in furtherance of justice and the exercise of such power will not be disturbed by this court except upon a showing of abuse of such discretion.

We find no abuse of discretion in allowing the amendment in question. The allegations of the complaint with respect to damages were very broad and, as noted by the trial judge, might properly be construed as embracing recovery for disfigurement. However, at the most, the effect of the amendment was to include an additional element of damage resulting from the wrongful acts originally set forth in the complaint. The medical testimony upon which plaintiff relied was introduced in evidence through depositions taken before trial, at which counsel representing defendants cross-examined the doctors. This medical testimony constituted a full disclosure of the physical condition of Mrs. Anders; and we find no basis upon which to hold that the amendment operated as a surprise or resulted in legal prejudice to defendants.

Error is also charged in the refusal by the trial judge to strike a statement made by Mrs. Anders during cross-examination. Upon being asked if she looked any more after starting to enter the street, she replied: "I looked, and I was cautious all the way." The motion of counsel for defendants to strike the statement, "I was cautious all the way," was refused.

The statement might have been properly stricken as a conclusion and not responsive to the question asked. However, the ruling was discretionary and we find no abuse of discretion or resulting prejudice to defendants' rights from the refusal to strike the testimony. The statement concerned the manner in which the witness looked as she attempted to cross the street. She was cross-examined as to what she

actually did and other witnesses testified as to her actions. When the statement is viewed in context and in the light of the testimony of the witness as to what she actually did in crossing the street, we fail to find any basis upon which to conclude that the trial judge abused his discretion in refusing the motion to strike.

Exception is also taken to the exclusion of testimony concerning a statement allegedly made by plaintiffs' son shortly after the accident. The witness Fred Yewell testified that he was present at the scene immediately after the accident and, while Mrs. Anders was lying in the street, heard her son, age 15, make the statement: "Mama, I told you not to cross." The trial judge excluded the statement, and properly so.

The statement was sufficiently close in point of time and place to form a part of the *res gestae*, but it lacked another essential element to make it admissible in evidence. It failed to "explain, elucidate or in some way characterize" the nature of the accident which occurred. *Bagwell v. McLellan Stores Co.*, 216 S. C. 207, 57 S. E. (2d) 257. The statement—"I told you not to cross"—did not explain the manner in which the declarant's mother attempted to cross the street or the manner in which the automobile which struck her was being operated at the time. The statement was, at most, an irrelevant opinion that the mother should not have attempted to cross the street. The mere fact that she failed to heed the son's advice would not constitute negligence on her part. In addition, the record is not clear as to whether the son, who had proceeded his mother across the street, even saw the accident occur.

The final questions involve a determination of whether there was any evidence reasonably tending to establish actionable negligence on the part of the operator of the automobile and, if so, whether the evidence conclusively established contributory negligence on the part of Mrs. Anders so as to bar recovery. It is elementary that

the testimony touching these questions must be viewed in the light most favorable to the plaintiffs.

Mrs. Anders was struck by the automobile driven by defendant, Norwood Nash, as she was attempting to cross Ocean Boulevard where it intersects with Eighth Street. Ocean Boulevard is the nearest street to the ocean. It is sixty feet in width, with four lanes for traffic—two northbound and two southbound. The speed limit was 35 m. p. h.

The Nash vehicle was proceeding north on Ocean Boulevard in the outside travel lane and Mrs. Anders was crossing the street from the driver's right (east to west). It is inferable that she was struck by the left front fender of the automobile when she had reached a point about halfway across the eastern half of the Boulevard. The lanes for travel were approximately fifteen feet in width so she was struck at a point approximately fifteen feet from the eastern curb, the direction from which she had entered the street. The brakes on the automobile were applied, according to one witness, "a second or so" before the impact, leaving skid marks fifty-one (51) feet in length. The driver testified that he did not apply the brakes "until the point of impact." The impact was of sufficient force to throw Mrs. Anders on to the hood of the car where she was carried forward approximately sixty feet and until the car was stopped. She then fell to the street. The driver testified that he was traveling at a speed of thirty (30) m. p. h.

The accident occurred about 7 o'clock, p.m., during daylight. The views of both Mrs. Anders and the driver of the automobile were unobstructed at the time. It was at the peak of automobile and pedestrian traffic, during the Fourth of July holiday period, with, as one witness described it, "almost a steady stream" of pedestrians crossing Ocean Boulevard from the beach.

While there were no marked crosswalks at the intersection of Ocean Boulevard and Eighth Street, it is inferable that Mrs. Anders was crossing at the time in the unmarked

crosswalk area defined by statute for pedestrian use. Section 46-258, 1962 Code of Laws. The respective rights and duties of the parties must therefore be determined in the light of the provisions of Section 46-433 of the 1962 Code of Laws. This section is as follows:

"When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right of way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is travelling or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield * * *."

In discussing the effect of the foregoing sections, we stated in *Carma v. Swindler,* 228 S. C. 550, 91 S. E. (2d) 254:

"At all crosswalks as defined in Section 46-258, *supra,* the driver of a vehicle must, except when traffic control signals are in operation, yield the right-of-way to a pedestrian crossing the roadway within the crosswalk, marked or unmarked, when the pedestrian is upon the driver's half of the roadway or approaching so closely from the opposite half of the roadway as to be in danger; and, to so yield, the driver must, if need be, slow down or stop."

While the driver testified that Mrs. Anders walked to the center of the street, then turned around and ran immediately in front of his automobile, the evidence is susceptible of other inferences. It is inferable that Mrs. Anders was proceeding to lawfully cross the street and had reached a point about fifteen feet from the curb when she was struck; and that the accident resulted (1) from the operation of the vehicle at a speed in excess of that which was reasonable in view of the congested traffic at the time, (2) the failure of the driver to keep a proper lookout, and (3) his failure to yield the right of way in violation of Section 46-433, *supra.*

While the question of liability is a close one, we think the trial judge properly submitted the issues to the jury for determination.

Judgment is accordingly affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.